UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

VICTOR M. HERRERA,                          )      No. EDCV 08-0586-RC
                                            )
            Plaintiff,                      )
                                            )      OPINION AND ORDER
      v.                                    )
                                            )
MICHAEL J. ASTRUE,                          )
Commissioner of Social Security,            )
                                            )
            Defendant.                      )
_____    )

      Plaintiff Victor M. Herrera filed a complaint on May 8, 2008,

seeking review of the Commissioner's decision denying his application

for disability benefits.  On October 20, 2008, the Commissioner

answered the complaint, and the parties filed a joint stipulation on

December 15, 2008.


                              **BACKGROUND**

                                   **I**

      On September 11, 2002, plaintiff applied for disability insurance

benefits under Title II of the Social Security Act ("Act"), 42 U.S.C.

§ 423, claiming an inability to work since April 1, 1997, due to neck,

back, and waist problems.  Certified Administrative Record ("A.R.")
57-59, 78.  The plaintiff's application was initially denied on
October 25, 2002, and was again denied on December 3, 2002, following
reconsideration.  A.R. 33-42.  The plaintiff then requested an
administrative hearing, which was held on July 17, 2003, before
Administrative Law Judge Norman Buls ("ALJ Buls").  A.R. 43, 249-68.
On October 24, 2003, ALJ Buls issued a decision finding plaintiff is
not disabled, A.R. 14-25, and the Appeals Council denied review of the
decision on April 19, 2004.  A.R. 3-7.


   On June 18, 2004, plaintiff filed his first complaint seeking
review of the Commissioner's decision denying his application for
disability benefits, Herrera v. Barnhart, EDCV 04-0732-RC ("Herrera
I"),[1] and on July 20, 2005, this Court remanded the matter to the
Social Security Administration ("S.S.A.") pursuant to 42 U.S.C.
§ 405(g), sentence four.  A.R. 427-38.  In so doing, this Court found
that "the evidence is ambiguous as to when plaintiff's condition
became disabling; however, it is clear that plaintiff's degenerative
spinal condition predates his last insured date."  A.R. 434.
Accordingly, the case was remanded "so 'the ALJ [can] create a record
which forms a basis for th[e] onset date.  The ALJ can fulfill this
responsibility by calling a medical expert or where medical testimony
is unhelpful, explor[e] lay evidence[,] including the testimony of
family, friends, or former employers to determine the onset date.'"
A.R. 438 (citation and footnote omitted).

---

   [1]  Pursuant to Fed. R. Evid. 201, this Court takes judicial
notice of relevant documents in Herrera I.

2

1    Following remand, the Appeals Council remanded the matter for

2  further administrative proceedings and ordered the administrative law

3  judge to consider whether plaintiff's Title II application should be

4  consolidated with his subsequent application for Supplemental Security

5  Income ("SSI") disability benefits.  A.R. 440, 630-32.  On

6  September 7, 2006, ALJ John W. Belcher ("the ALJ") held a new

7  administrative hearing.  A.R. 307-51.  On December 22, 2006, the ALJ

8  issued a decision finding plaintiff is not disabled.  A.R. 291-301.

9  The plaintiff sought review from the Appeals Council, which on

10  March 28, 2008, granted review of the denial of plaintiff's SSI

11  application,[2] as well as a later favorable determination, A.R. 269-73,

12  279-84, and on March 31, 2008, denied review of the denial of

13  plaintiff's Title II application.  A.R. 274-78.  The plaintiff now

14  requests this Court review the Commissioner's denial of his

15  application for Title II disability benefits.

16

17                                    **II**

18    This Court set forth the following relevant factual findings in

19  Herrera I:

20  _____

21    [2]  Since plaintiff's claim for SSI benefits remains before
the Appeals Council, plaintiff has not exhausted his
22  administrative remedies regarding that claim and the ALJ's
decision to deny plaintiff SSI benefits is not final.  Thus, this
23  Court lacks subject matter jurisdiction to review the ALJ's
denial of SSI benefits to plaintiff.  See Califano v. Sanders,
24  430 U.S. 99, 108, 97 S. Ct. 980, 986, 51 L. Ed. 2d 192 (1977) (42
U.S.C. § 405(g) "clearly limits judicial review to a particular
25  type of agency action, a 'final decision of the [Commissioner]
made after a hearing.'").  Although the Commissioner may waive
26  the requirement that administrative remedies be exhausted, Bass
v. Soc. Sec. Admin., 872 F.2d 832, 833 (9th Cir. 1989) (per
27  curiam), he has not done so here.

28

                                    3

The plaintiff, who was born on March 10, 1954, is currently [55] years old. He has a ninth-grade education, and has previously worked as a painter, upholsterer and carpenter. [¶] The plaintiff has a long history of back pain, initially injuring his back in the 1980s. Between June 20, 1997, and September 20, 2002, plaintiff received treatment from Feliciano Reyes, M.D., who diagnosed him with a cervical sprain, among other conditions. A lumbar spine CT scan taken June 25, 1997, revealed broadbased circumferential disc protrusion at L3-L4, without focal protrusion, and degenerative changes in the apophyseal joints leading to mild foraminal encroachment at L5-S1. A lumbar spine CT scan taken September 5, 2002, revealed a bulging disc at L4-5 and a disc protrusion centrally at L5-S1. [¶] Cervical and lumbosacral spine x-rays taken at Victor Valley Community Hospital on March 20, 1998, revealed degenerative disc disease at C3-4, C4-5, and C5-6, with a small posterior osteophyte encroaching upon the central canal at C5-6, and mild anterior spurring of L3-L5. Cervical spine x-rays taken at the same facility a year later, on February 26, 1999, showed mild disc space narrowing at C4-5, C5-6, and C6-7, with facet spurring. [¶] On July 16, 1998, Rajiv Puri, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him with a herniated lumbar disc, degenerative lumbosacral spine arthritis, and cervical spine arthritis. Cervical and lumbosacral spine x-rays taken July 22, 1998, demonstrated mild disc space narrowing

4

at C5-6, with associated anterolateral and posterolateral
spurring and the suggestion of early arthritic changes
involving the facet joints at L5-S1 bilaterally.  A lumbar
spine MRI obtained August 13, 1998, showed mild degenerative
changes of the lumbar spine, with straightening of the
lumbar lordosis, which could be caused by muscle spasm.  On
August 17, 1998, Dr. Puri referred plaintiff for physical
therapy.  On February 15, 1999, Dr. Puri revised his
diagnosis to include degenerative arthritis in the cervical
and lumbosacral spine.  [¶] . . . [¶]  Starting on or about
November 8, 2001, Arthur E. Jimenez, M.D., began treating
plaintiff for herniated cervical and lumbar discs.  On
October 22, 2002, Dr. Jimenez opined that plaintiff: is
limited to lifting or carry less than 10 pounds occasionally
or frequently; can stand and/or walk for less than 2 hours
in an 8-hour day; can sit for less than 6 hours in an 8-hour
day; can occasionally climb, balance, stoop, kneel, crouch,
or crawl; and is limited in his ability to work at heights
or around moving machinery as well as to work at temperature
extremes.  Dr. Jimenez further opined plaintiff needs to
alternate standing and sitting, and he needs a cane to walk
if he walks over 2 miles.  On June 5, 2003, Dr. Jimenez
opined plaintiff:  can lift less than 10 pounds; can stand
and/or walk for approximately 5-10 minutes in an 8-hour day;
can occasionally twist, stoop, crouch and climb; has
problems handling, fingering, feeling, and pushing or
pulling; needs the opportunity to change positions at will,
and can only sit or stand for 10 minutes before having to

1   walk for 10 minutes.  Dr. Jimenez further opined plaintiff

2   must lie down for 20-30 minute intervals at unpredictable

3   times during the day.  Finally, Dr. Jimenez found plaintiff

4   should avoid all exposure to hazards, even moderate exposure

5   to extreme cold or fumes, and concentrated exposure to

6   extreme heat, humidity and noise.  Dr. Jimenez concluded

7   that plaintiff is "unable to perform any duties at this

8   time."

9

10   A.R. 428-31 (Herrera I at 2:17-5:16 (footnotes and citations

11   omitted)).

12

13   After this Court's remand, further medical evidence was obtained,

14   showing:  On February 10 and 11, 2004, plaintiff was treated in the

15   emergency room at Loma Linda University Medical Center ("Loma Linda")

16   for an acute exacerbation of his chronic low back pain, and he was

17   provided Toradol[3] and recommended to attend a pain clinic.  A.R. 536-

18   49.  A lumbar spine MRI showed multilevel degenerative disc disease

19   and spondylosis with disc dessication from L2-L3 through L4-L5, a tiny

20   left paracentral disc protrusion, without significant impingement, and

21   fluid in the facet joints at L5-S1, suggesting inflammatory changes.

22   A.R. 538.  Lumbar spine x-rays showed no evidence of acute fracture or

23   dislocation in the lumbar spine, minimal degenerative disc disease and

24   facet arthritis, minimal degenerative listhesis and minimal sacroiliac

25   arthritis.  A.R. 547.

26   _____

27       [3]  "Toradol, an nonsteroidal anti-inflammatory drug, is used
     to relieve moderately severe, acute pain."  The PDR Family Guide
28   to Prescription Drugs, 687 (8th ed. 2000).

On March 28, 2004, Warren David Yu, M.D., an orthopedic surgeon, examined plaintiff and diagnosed him as having cervical neck pain with underlying spondylosis, low back pain with underlying degeneration, and bilateral carpal tunnel syndrome. A.R. 550-53. Cervical spine x-rays showed moderate multilevel spondylosis from C3 to C7, with straightening and reversal of the cervical lordosis and degenerative anterior spurring. A.R. 552-53. Dr. Yu opined plaintiff:

> should be able to walk without an assistance device. He
> should be able to sit, stand or walk for up to six hours in
> an eight-hour day with appropriate breaks. He should
> occasionally be allowed to pick up 20 pounds, and less than
> 10 pounds frequently. He should have only frequent use of
> the upper extremities for pushing, pulling, fine finger
> motor movements and handling. He should be limited to only
> occasional squatting, stooping, kneeling, crawling, climbing
> or bending.

A.R. 553.

On May 1, 2005, Dr. Yu reexamined plaintiff and diagnosed plaintiff as having myofascial neck and back pain with underlying degenerative changes and mild bilateral carpal tunnel syndrome. A.R. 574-77. Lumbosacral spine x-rays were unremarkable, showing only "mild degenerative spurring of the lumbar spine." A.R. 577. Dr. Yu opined as he did in 2004 regarding plaintiff's RFC, but offered no opinion regarding plaintiff's ability to squat, stoop, kneel, crawl, climb or bend. Id.

7

1    On July 19, 2004, Emmanuel P. Katsaros, D.O., examined plaintiff

2    at Loma Linda and diagnosed him as having:  lumbosacral spine

3    degenerative disc disease, without cord compression or radiculopathy

4    and with secondary lumbar strain with loss of spinal curvature and

5    weakness of the lumbar paraspinal muscles; neck degenerative disc

6    disease and degenerative joint disease; generalized osteoarthritis;

7    and carpal tunnel syndrome with documented neuropathy.  A.R. 616-20.

8    Dr. Katsaros recommended plaintiff try conservative treatment, such as

9    hot packs and physical and water aerobic therapy, and recommended a

10   pain clinic.  A.R. 619-20.

11

12   On May 24, 2006, Dr. Jimenez opined that because of plaintiff's

13   cervical and lumbar degenerative disc disease and carpal tunnel

14   syndrome, plaintiff:  can frequently lift less than 10 pounds; can

15   stand and/or walk less than 2 hours in an 8-hour day; can sit less

16   than 2 hours in an 8-hour day; can never twist, stoop, crouch and

17   climb stairs or ladders; has problems reaching, handling, fingering,

18   feeling, and pushing or pulling; needs to change positions from

19   sitting or standing at will; can only sit for 10 minutes and stand for

20   15 minutes before changing positions; must walk every 10 minutes for

21   at least 30 minutes; needs to lie down twice a day; and should avoid

22   all exposure to hazards and extreme cold, wetness, humidity, noise and

23   fumes.  A.R. 622-24.  Finally, Dr. Jimenez concluded plaintiff's

24   condition would cause him to be absent from work more than three times

25   a month.  A.R. 624.

26   //

27   //

28   //

On August 28, 2006, Edward T. Gallegos, M.D.,[4] opined plaintiff: can frequently lift 10 pounds; can stand and/or walk about 2 hours in an 8-hour day; can sit less than 2 hours in an 8-hour day; can occasionally twist, stoop, crouch and climb stairs, but never climb ladders; has no problems reaching, handling, fingering or pushing/ pulling, but does have a problem feeling, due to arthralgia in both wrists and the left elbow; must avoid all exposure to hazards and even moderate exposure to extreme cold and heat, wetness, humidity, noise and fumes; needs the opportunity to change positions at will; can only sit for 20 minutes and stand for 15 minutes at a time before having to walk for 15 minutes; and must lie down about 7 times per day at unpredictable intervals. A.R. 627-29. Dr. Gallegos further opined that plaintiff's impairments would never cause him to be absent from work. A.R. 629.

Medical expert Dr. Joseph Jensen testified at the 2006 administrative hearing, opining plaintiff has moderate cervical and lumbar degenerative disc disease with multiple level spondylosis and degenerative arthritis, hyperlipidemia and hyperthyroidism. A.R. 314-

---

[4] At the administrative hearing, plaintiff produced Dr. Gallegos's business card and testified Dr. Gallegos has treated him about four times over the past year for his bad back and neck. A.R. 323-26. Additionally, plaintiff identified Dr. Gallegos as a physician who treated him in 2006, and who prescribes Gabapentin to him. See A.R. 498-99. Thus, Dr. Gallegos should be considered one of plaintiff's treating physicians. See Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (physician who saw claimant five times in three years for treatment was treating physician); Ghokassian v. Shalala, 41 F.3d 1300, 1303 (9th Cir. 1994) (physician who saw claimant twice within a 14-month period and prescribed medication to him was treating physician).

35.   These conditions, according to Dr. Jensen, would cause plaintiff to "have a significant limitation in the workplace. . . ."  A.R. 321. Based on plaintiff's conditions, Dr. Jensen opined plaintiff:

> [could] lift[] and carry[] . . . a maximum of 20 pounds on [an] occasional[] basis or 10 pounds frequently[;] [could] stand[] and walk[] . . . up to four hours in an eight hour day[;] [could sit] six hours in an eight hour day with the usual breaks[;] . . . could manage occasionally, stairs, ramps, but no ladders, ropes or scaffolding[;] could occasionally balance, bend, stoop, kneel [and] crawl[;] . . . would be precluded from constant gross and fine manipulation, but could perform this bilaterally on a frequent basis[;] . . . could occasionally reach above shoulder level with both shoulders [and occasionally perform] pedal operation bilaterally[;] . . . would be probably . . . preclu[ded] from constant exposure to the extremes of dampness and coldness . . . [;] [and] . . . should avoid hazardous heights or dangerous machinery. . . .

A.R. 322-23.  Finally, Dr. Jensen opined plaintiff's limitations have "in all likelihood" existed for the entire period of 1997 to the present.  A.R. 326.


**DISCUSSION**

**III**

   The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability

10

1  benefits to determine if his findings are supported by substantial
2  evidence and whether the Commissioner used the proper legal standards
3  in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th
4  Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

5

6      As this Court found in Herrera I, "plaintiff was last insured
7  under Title II on December 31, 1999," and plaintiff has the "burden to
8  prove he was either permanently disabled or subject to a condition
9  that became so severe as to disable him **prior** to that date."  A.R. 433
10  (citing Armstrong v. Comm'r of the Soc. Sec. Admin., 160 F.3d 587, 589
11  (9th Cir. 1998); Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996)).
12  The claimant is "disabled" for the purpose of receiving benefits under
13  the Act if he is unable to engage in any substantial gainful activity
14  due to an impairment which has lasted, or is expected to last, for a
15  continuous period of at least twelve months.  42 U.S.C.
16  § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

17

18      Regulations promulgated by the Commissioner establish a five-step
19  sequential evaluation process to be followed by the ALJ in a
20  disability case.  20 C.F.R. § 404.1520.  In the **First Step**, the ALJ
21  must determine whether the claimant is currently engaged in
22  substantial gainful activity.  20 C.F.R. § 404.1520(b).  If not, in
23  the **Second Step**, the ALJ must determine whether the claimant has a
24  severe impairment or combination of impairments significantly limiting
25  him from performing basic work activities.  20 C.F.R. § 404.1520(c).
26  If so, in the **Third Step**, the ALJ must determine whether the claimant
27  has an impairment or combination of impairments that meets or equals
28  the requirements of the Listing of Impairments, 20 C.F.R. § 404,

Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work.  20 C.F.R. § 404.1520(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 404.1520(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since April 1, 1997, the alleged onset date.  (Step One).  The ALJ then found plaintiff has the severe impairments of "degenerative disc disease of the lumbar and cervical spine and bilateral carpal tunnel syndrome[,]"[5] (Step Two); but plaintiff does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff cannot perform his past relevant work.  (Step Four).  Finally, the ALJ concluded that plaintiff can perform a significant number of jobs in the national economy; therefore, he is not disabled.  (Step Five).

_____

[5]  The ALJ also found plaintiff does not have a severe mental impairment, noting:

> There is no evidence of a longitudinal history of a psychiatric impairment, of repeated hospitalizations, or of prolonged outpatient treatment that has lasted or is expected to last for 12 continuous months.  The [plaintiff] has neither required nor received extensive psychiatric treatment other than the use of mild anti-depressant medication, which he stated he first began taking approximately 10 days prior to the [2006] hearing.

A.R. 296.

IV

A claimant's residual functional capacity ("RFC") is what he can still do despite his physical, mental, nonexertional, and other limitations.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 460 (9th Cir. 2001); <u>see also</u> <u>Valentine v. Comm'r Soc. Sec. Admin.</u>, 574 F.3d 685, 689 (9th Cir. 2009) (The RFC is "a summary of what the claimant is capable of doing (for example, how much weight he can lift)."). Here, the ALJ found plaintiff has the RFC to perform a limited range of light work,[6] as follows:

> [plaintiff can] lift and/or carry 10 pounds frequently and 20
> pounds occasionally.  Out of an 8-hour period, the [plaintiff]
> can stand and/or walk for 4 hours and sit for 6 hours with the
> ability to change positions during the normal workday breaks.
> Nonexertional limitations include occasional climbing stairs,
> bending, stooping, crouching, kneeling, crawling, and reaching
> above shoulder level with the bilateral upper extremities.  The
> [plaintiff] cannot: balance; climb ladders, ropes, or scaffolds;
> or walk on extremely uneven ground (i.e., plowed fields).  He
> must avoid constant exposure to extremely hot or cold
> environments and cannot work at unprotected heights or around
> dangerous, moving machinery.  With the bilateral hands, the

---

[6] Under Social Security regulations, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."  20 C.F.R. § 404.1567(b).

1      [plaintiff] can frequently fine finger/manipulate as well as

2      engage in power, forceful gripping, torquing, and twisting.  He

3      can occasionally power grip and twist with the bilateral hands

4      and occasionally use foot controls with the bilateral lower

5      extremities.

6

7  A.R. 297.  However, plaintiff contends the ALJ's RFC finding, as well

8  as the Step Five determination, are not supported by substantial

9  evidence because, among other reasons, the ALJ did not properly

10 consider the opinions of his treating physicians, Drs. Jimenez and

11 Gallegos.[7]  Jt. Stip. at 5:20-27, 10:13-12:7, 14:13-17.  The plaintiff

12 is correct.

13

14     The medical opinions of treating physicians are entitled to

15 special weight because the treating physician "is employed to cure and

16 has a greater opportunity to know and observe the patient as an

17 individual."  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987);

18 Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

19 1999).  Therefore, the ALJ must provide clear and convincing reasons

20 for rejecting the uncontroverted opinion of a treating physician, Ryan

21 v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008), and

22 "[e]ven if [a] treating doctor's opinion is contradicted by another

23 doctor, the ALJ may not reject this opinion without providing

24 'specific and legitimate reasons' supported by substantial evidence in

25 the record."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998);

26

27     [7]  Although Dr. Jimenez offered opinions regarding both
   plaintiff's physical and mental limitations, this discussion
28 addresses only plaintiff's physical limitations.

14

1  <u>Tommasetti v. Astrue</u>, 533 F.3d 1035, 1041 (9th Cir. 2008).

2

3       On October 22, 2002, and again on June 5, 2003, Dr. Jimenez

4  opined plaintiff was severely limited in his ability to perform work-

5  related activities.  A.R. 206-09, 233-35.  Indeed, on June 5, 2003,

6  Dr. Jimenez opined plaintiff is unable to perform any duties at all.

7  A.R. 235.  The ALJ found Dr. Jimenez's 2002 and 2003 opinions do not

8  support a finding plaintiff was not disabled prior to his date last

9  insured, stating:

10

11       Dr. Jimenez's opinion that the claimant was disabled cannot

12       be [used to] infer[] that the [plaintiff's] impairments were

13       disabling some time prior to the date last insured of

14       December 31, 1999, and the totality of the record does not

15       support a finding of disabled on or before the date last

16       insured.

17

18  A.R. 297.  Apart from the fact that the first clause of this statement

19  makes no sense without editing, the statement, as a whole, is not a

20  "specific and legitimate" reason for rejecting Dr. Jimenez's opinions

21  since it is conclusory and does not identify the parts of the record

22  supposedly supporting the conclusion.[8]  See <u>Regennitter v. Comm'r of</u>

23  _____

24       [8]  This Court in Herrera I held the ALJ erred in not finding
     Dr. Jimenez's opinions relevant to determine when plaintiff's
25   disability commenced, noting:

26       "medical evaluations made after the expiration of a
27       claimant's insured status are relevant to an evaluation
         of the preexpiration condition."  <u>Lester v. Chater</u>,
28       81 F.3d 821, 832 (9th Cir. 1995) (quoting <u>Smith v.</u>

the Soc. Sec. Admin., 166 F.3d 1294, 1299 (9th Cir. 1999)
("[C]onclusory reasons will not justify an ALJ's rejection of a
medical opinion."); Burger v. Astrue, 536 F. Supp. 2d 1182, 1187 (C.D.
Cal. 2008) (same).  Moreover, Dr. Jimenez's opinions provide
significant insight into plaintiff's condition prior to his date last
insured since medical expert Dr. Jensen opined plaintiff's condition
has "in all likelihood" remained static since 1997.[9]  A.R. 326.

      The ALJ also erred in failing to address the 2006 opinions of
Drs. Jimenez and Gallegos, both of whom opined plaintiff cannot work
an 8-hour day.  A.R. 622-24, 627-29.  Indeed, without explaining why
he disagreed with these opinions, the ALJ, in determining plaintiff
has the RFC to perform a limited range of light work, implicitly
rejected Dr. Jimenez's and Dr. Gallegos's 2006 opinions.  This was

_____

          Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988)); see also
          Flaten v. Sec. of Health & Human Servs., 44 F.3d 1453,
          1461 & n.5 (9th cir. 1995) ("Retrospective diagnoses by
          treating physicians and medical experts . . . are . . .
          relevant to the determination of a continuously
          existing disability with onset prior to expiration of
          insured status."); Kemp v. Weinberger, 522 F.2d 967,
          969 (9th Cir. 1975) (When a disease is known to
          progress in a slow, degenerative process, evidence of
          medical deterioration can be probative of a patient's
          condition at an earlier time).

Thus, the ALJ could not again reject Dr. Jimenez's opinions on
the ground Dr. Jimenez's opinions could not be applied
retroactively.

          [9]  This Court in Herrera I noted ALJ Buls's statement that
he would clearly find plaintiff disabled as of July 17, 2003.
Based on Dr. Jensen's testimony that plaintiff's condition has
"in all likelihood" remained the same from 1997, it is reasonable
to infer that ALJ Buls would have found plaintiff was disabled
prior to his date last insured.

clear legal error.  Lingenfelter v. Astrue, 504 F.3d 1028, 1038 n.10

(9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1286 (9th Cir. 1996).

For all these reasons, the ALJ's RFC assessment is not supported by

substantial evidence.


Hypothetical questions posed to a vocational expert must consider

all of the claimant's limitations, Bray v. Astrue, 554 F.3d 1219, 1228

(9th Cir. 2009); Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir.

2002), and "[t]he ALJ's depiction of the claimant's disability must be

accurate, detailed, and supported by the medical record."  Tackett v.

Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).  Here, the ALJ failed to

include plaintiff's limitations, as found by Drs. Jimenez and

Gallegos, in the hypothetical question to vocational expert Corinne

Porter, whose response to the hypothetical question was the basis for

the ALJ's Step Five determination that plaintiff can perform other

jobs in the national economy.  A.R. 344-51.  "[B]ecause the ALJ erred

in excluding some of [plaintiff's] limitations from the RFC

assessment, and thus from the [vocational expert's] hypothetical, the

[vocational expert's] testimony 'has no evidentiary value.'"

Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir.

2008) (citation omitted); see also Edlund v. Massanari, 253 F.3d 1152,

1160 (9th Cir. 2001) (ALJ erred in not including limitations from

claimant's mental impairment in hypothetical question posed to

vocational expert).  For this reason, the ALJ's Step Five

determination that plaintiff can perform other jobs in the economy

also is not supported by substantial evidence.  Lingenfelter,

504 F.3d at 1041; Robbins v. Soc. Sec. Admin., 466 F.3d 880, 886 (9th

Cir. 2006).

**V**

This Court has the discretion to award disability benefits to a plaintiff when there is no need to remand the case for additional factual findings.  McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Generally, the Court will direct the award of benefits in cases where the record has been fully developed and where further administrative proceedings would serve no useful purpose.  McCartey, 298 F.3d at 1076-77; Vertigan v. Halter, 260 F.3d 1044, 1053 (9th Cir. 2001).

Where the ALJ "fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [this Court] credit[s] that opinion 'as a matter of law.'"  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995) (quoting Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989)).  Here, properly crediting the opinions of Drs. Jimenez and Gallegos, it is clear that, prior to his date last insured, plaintiff could not perform substantial gainful activity for 8 hours a day or 40 hours a week; therefore, plaintiff is disabled.  See Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("[I]n the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy, even though the vocational expert did not address the precise work limitations established by the improperly discredited [evidence], remand for an immediate award of benefits is appropriate."); Kornock v. Harris, 648 F.2d 525, 527 (9th Cir. 1980) (per curiam) ("The ability to work only a few hours a day . . . is not the ability to engage in 'substantial gainful activity.'").

//

1    Further, plaintiff initially filed his application for Title II

2  disability benefits in 2002 -- seven years ago.  "[A] remand for

3  benefits is indicated particularly where a claimant has already

4  experienced lengthy, burdensome litigation."[10]  Vertigan, 260 F.3d at

5  1053; see also Benecke, 379 F.3d at 595 ("Remanding a disability claim

6  for further proceedings can delay much needed income for claimants who

7  are unable to work and are entitled to benefits, often subjecting them

8  to 'tremendous financial difficulties while awaiting the outcome of

9  their appeals and proceedings on remand.'" (quoting Varney v.

10 Secretary of Health & Human Servs., 859 F.2d 1396, 1398 (9th Cir.

11 1988))).


13                                **ORDER**

14    IT IS ORDERED that plaintiff's request for relief be granted, and

15 the Commissioner shall award Title II disability benefits to plaintiff

16 under 42 U.S.C. § 423.


18 DATE:  _October 6, 2009_        _/S/_ ROSALYN M. CHAPMAN_____
                                   ROSALYN M. CHAPMAN
19                                 UNITED STATES MAGISTRATE JUDGE

26    [10]  Having reached this conclusion, it is unnecessary to

27 address the other issues plaintiff raises.

28 R&R-MDO\08-0568.mdo
   10/6/09